IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| PHYLLIS E. LYBRAND, | ) | Civil Action No. 3:10-2293-JFA-JRM |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | ) ) ) | |
| Defendant. | ) ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB on May 11, 2007, alleging disability as of December 15, 2002. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on November 30, 2009, at which Plaintiff (represented by counsel) and a vocational expert ("VE") appeared and testified. On December 11, 2009, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled because she was able to perform her past relevant work as a companion.

Plaintiff was sixty-one years old at the time of the ALJ's decision. She has a seventh grade education, and past relevant work as a farm worker and a companion. Plaintiff alleges disability due to arthritis, back problems, high blood pressure, depression, and thyroid problems. Tr. 140.

The ALJ found (Tr. 11-18):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2003.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 15, 2002, through her date last insured of December 31, 2003 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease[,] status post remote lumbar spine laminectomy in 1995, and osteoarthritis (20 CFR 404.1520 (c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that through the date last insured, the claimant had the residual functional capacity to perform essentially the full range of light work as defined in 20 CFR 404.1567(b) in that she was able to lift and carry up to twenty pounds occasionally and ten pounds frequently; and occasionally stoop, twist, kneel, crouch, crawl, balance, and climb ramps and stairs. She was not able to climb ladders, ropes, or scaffolds.

6. Through the date last insured, the claimant was capable of performing past relevant work as a companion. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 15, 2002, the alleged onset date, through December 31, 2003, the date last insured (20 CFR 404.1520(f)).

On July 8, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Tr. 1-3. Plaintiff filed this action in the United States District Court on September 1, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v.

Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, supra.

## **MEDICAL EVIDENCE**[1]

Prior to the December 2003 expiration of Plaintiff's insured status, a printout of medications prescribed by Dr. Mark Meiler in 2002 and 2003 reflects one prescription for Naproxen (an anti-inflammatory medication) in May 2003, and prescriptions for medications to treat hypertension, thyroid problems, and gastrointestinal problems. Tr. 335-336. There are no treatment notes documenting any complaints of, or treatment for, hand problems prior to November 2003, although injections for arthritis in her left thumb during that period are referenced in later records. See Tr. 308.

In November 2003, Plaintiff was examined by Dr. James J. Hill. She appears to have been referred by Dr. Meiler. Dr. Hill diagnosed Plaintiff with basilar joint arthritis of her left thumb,

---

[1] The record contains medical records from 1994 through 2009. Many of these records are not pertinent to the relevant time period, as Plaintiff had to show that she was disabled on or before her last date insured of December 31, 2003. See 42 U.S.C. § 423(c); 20 C.F.R. § 404.101; Blalock, 483 F.2d at 775. Additionally many of the records are from well before Plaintiff's alleged onset date of December 15, 2002.
Plaintiff's arguments concerning the medical records center on whether the ALJ should have found certain hand-related limitations during the relevant time period. Thus, only evidence relevant to this time period and to these issues are detailed here.

which he noted was "quite significant." Tr. 308. Plaintiff complained of pain and swelling in her left hand and arm (up to her elbow) for a year, that worsened in the prior six months. Dr. Hill noted that Plaintiff had been treated with injections from Dr. Meiler, but "the symptoms have progressed to the point where it is appropriate for a hand surgery referral." X-rays revealed "quite severe" arthritis. Dr. Hill prescribed a thumb splint to be worn at night and as needed in an effort to "buy her some time in the range of one to three years to get by without surgery." He stated he would be glad to schedule surgery if the splint was not successful after a two month trial. Tr. 308, 317, 322.

In April 2004, five months after her last visit (and four months after her date last insured), Plaintiff returned to Dr. Hill and complained of severe left thumb pain. Dr. Hill noted that Plaintiff took care of her grandchildren and would not be able to lift them for sixteen weeks post-operatively. He stated that he was going to set Plaintiff up for reconstructive surgery. Plaintiff claimed that she "literally cannot live her life at this point in time, and needs to choose the relief now." Tr. 307. After a follow up visit in May 2004, however, Dr. Hill noted Plaintiff canceled the surgery because her "insurance would not cover the hospital or her husband would not let her do it." Plaintiff said she wanted the surgery, but Dr. Hill noted Plaintiff was not ready for surgery because some draining pus in her thumb had to be cleared up first. Tr. 306, see also Tr. 322. By June, the skin over Plaintiff's thumb looked better. Tr. 305. Plaintiff stated that her joint pain was better when she wore her splint. Tr. 305. In September 2005, Dr. Hill stated that Plaintiff would need a skin graft procedure six months prior to joint surgery (arthroplasty) on her thumb. Tr. 303.

Plaintiff was not treated by Dr. Hill again until August 2005 (nearly a year after her previous visit), and had no memory of the discussion about needing a skin graft prior to surgery on her thumb. She complained of the same problem with constant pain and some swelling. Tr. 302, 318.

4

Plaintiff underwent a successful skin graft of her left thumb in October 2005 (nearly two years after her date last insured). Tr. 291, 300-301. Dr. Hill noted that Plaintiff had severe pantrapezial arthritis at the base of the joint of her left thumb. Tr. 293. In December 2005, Dr. Hill stated that "we will just let it [the skin graft] mature and when she is ready we will consider reconstructing her thumb. It sounds like that is going to be a few months until she gets her affairs in order." Tr. 298.

In November 2009 (nearly six years after Plaintiff's date last insured), Dr. Linda Campbell, who apparently treated Plaintiff in November 2008 and June 2009 for hypertension, anxiety, and right knee pain (see Tr. 327-328),[2] completed a form titled "Physical Capacities Evaluation." Dr. Campbell opined, in part, that Plaintiff had the following permanent restrictions which she thought had been present since 2001: Plaintiff could not lift any weight frequently, could lift up to ten pounds occasionally, could never reach above shoulder level, could occasionally reach at and below waist level, could only occasionally handle, and could only occasionally finger. Plaintiff could, however, repetitively use both hands. Tr. 332-333.

## **HEARING TESTIMONY**

At the hearing before the ALJ, Plaintiff testified that she and her husband had been separated for a year and one-half and she lived with her adult daughter. She said she quit school in the eighth grade and had never gone back to get her GED. She testified that she had a valid driver's license, but her husband drove her to the hearing, and her daughter usually did most of the driving. Tr. 27-30.

---

[2]Medication records from Eau Claire Cooperative Health Centers, where Dr. Campbell works, indicate prescriptions for Plaintiff dating back to April 2007 (Tr. 330-331), but there is no evidence of any visits with Dr. Campbell prior to November 2008.

5

Plaintiff testified that, at the time she began receiving treatment for her left hand, she was advised not to lift over five pounds with her left hand, and not to lift over ten pounds with her right hand. Tr. 46.[3] She stated later in the hearing that, prior to her December 2003 date last insured, she could lift ten or fifteen pounds. Tr. 56. She said she could not grip or open jars with either hand, and these problems started after she started having problems with her thumb. Tr. 46-47.

## **DISCUSSION**

Plaintiff asserts that: (1) the ALJ failed to perform an analysis of her ability to perform her past relevant work that complies with the requirements of SSR 82-62, 20 C.F.R. § 404.1520, and Fourth Circuit precedent; and (2) the ALJ's residual functional capacity ("RFC") findings are not supported by the evidence or properly explained, as required by SSR 96-8p. The Commissioner argues that substantial evidence[4] supports the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Act, and the decision is free of reversible legal error.

    A.    <u>Past Relevant Work</u>

Plaintiff argues that the ALJ erred in finding that she could perform her past work as a companion and should have found her disabled under the medical-vocational guidelines.[5] She

---

[3]There are no medical records in the record that contain such a restriction.

[4]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

[5]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must
(continued...)

6

asserts that there is insufficient information in the record to determine whether she actually performed her work as a companion at a substantial level and that the Social Security Administration previously evaluated the position and determined it was not substantial past work activity. The Commissioner contends that the ALJ reasonably found that Plaintiff's past relevant work as a companion did not exceed her RFC for light work. The Commissioner argues that Plaintiff's past work as a companion is substantial gainful activity ("SGA") because she performed it for nine months in 2002 for an income of $11,988.

At the fourth step of the disability inquiry, a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy. SSR 82-61. The claimant bears the burden of establishing that he or she is incapable of performing his or her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b).

---

$^{5}$(...continued)
follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

The parties agree that if Plaintiff cannot perform her past relevant work, Rule 202.02 of the medical-vocational guidelines promulgated by the Commissioner (see 20 C.F.R. Pt. 404, Subpt. P, App. 2) would direct a finding of "disabled" as Plaintiff is more than fifty-five years old, she is limited to light work, and (if she cannot perform her past relevant work) is limited to unskilled work (because she has no transferable skills from her past work). If Plaintiff can perform her past relevant work, however, the analysis ends at step four of the sequential evaluation process and the medical-vocational guidelines (used at step five) are not relevant.

Social Security Ruling 82-62 requires the ALJ to determine the following when evaluating whether a claimant can perform her past relevant work:

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the past job/occupation.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 86-62.

Here, the ALJ properly found that Plaintiff's past employment as a companion constituted SGA and that she was able to perform this past relevant work despite her impairments. The ALJ complied with SSR 82-62 because he made a finding of fact as to Plaintiff's RFC (see Tr. 13-17), determined the physical and mental demands of Plaintiff's past work as a companion through testimony from the VE, and determined that Plaintiff's RFC would permit her to return to this past job. The Commissioner may employ the services of a VE at step four of the sequential evaluation process to help determine whether a claimant can perform his past relevant work. See 20 C.F.R. § 404.1560. The Commissioner may rely on the general job categories of the Dictionary of Occupational Titles ("DOT") as presumptively applicable to the claimant's prior work. DeLoache v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983).[6]

Plaintiff argues that the ALJ erred because it is unclear whether Plaintiff's work as a companion was SGA. Although she argues that the administration previously determined that this was not SGA, review of the report cited (which is dated May 21, 2007) reveals it only addresses work

---

[6] Plaintiff, citing Vertigan v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001), appears to argue that Plaintiff's job duties as a companion could not be parsed out of her job as a home attendant. In this case, however, there is substantial evidence that Plaintiff performed the companion job itself (and not a composite job as found in Vertigan) for nine months when she worked for Ms. Verlene Holley.

8

after December 15, 2002 (work after her alleged onset date), and the report was used to determine if work that Plaintiff did in 2003 was substantial activity. In it, Plaintiff reported that she worked as an "elderly care/sitter" from January 2003 to February 2003, and stopped working because the client "Mrs. Padgett" went to an elderly care home. Tr. 126. It was determined that the work in 2003 was not SGA. Tr. 132.

In contrast, the ALJ found that Plaintiff's work as a companion in 2002 (prior to her alleged onset of disability) was SGA. On May 31, 2007 (after the May 17, 2007 report in which it was determined that Plaintiff's 2003 earnings were not SGA) Plaintiff completed a Work History Report, in which she listed her work in the last fifteen years as consisting of a job as a farm laborer, a job as a "private sitter" for the elderly, and two jobs as a "caregiver" for the elderly. Tr. 146, 153. Plaintiff indicated she was "not good with dates" and was unsure of the dates of these three jobs. Tr. 146, 153. She described the jobs (without specifically distinguishing which she considered to be the private sitter job and which she considered to be the caregiver jobs) as:

> One job where she cared for an elderly woman who could not walk. Plaintiff had to move the woman in and out of her wheelchair, dress and bathe her, and lift her in and out of the shower. Tr. 148.
>
> A second job at which Plaintiff made the elderly woman's bed, mopped her floor, helped her take baths, and moved her in and out of her bed and chairs. Tr. 149.
>
> A third job at which Plaintiff prepared meals for an elderly woman, took the woman to medical appointments and anywhere else she needed to go, did her laundry and light housework, and kept her company. Plaintiff reported that this job required "no lifting." Tr. 150.

Plaintiff's earnings record reveals that in 2002, she earned a total of $12,726,30. Of this, $738.30 was from employer Tomaco Inc. (an elder care business), and $11,988.00 from private employer Verlene Holley. Tr. 123. In 2003, after the alleged onset of disability, Plaintiff worked for

9

Tomaco Inc. again and earned $556.40. Tr. 123. Plaintiff's earnings for the job for private employer Ms. Holley constitute SGA because she earned $1332 per month ($11,988 divided by nine months) at that job.[7] For calendar year 2002, a claimant's countable earnings are considered SGA if the amount averages more than $780 per month. The countable earnings are considered SGA if the amount averages more than $800 per month for calendar year 2003. See Social Security Program Operation Manual System DI 10501.015 Table B, which is available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited January 6, 2012); see also 20 C.F.R. §§ 404.1572, 404.1574 (definition and discussion of SGA).

At the hearing, Plaintiff testified that she cared for Ms. Holley for nine months in 2002 (Tr. 33-34), and the job involved "light duty housework, sweeping and mopping, cleaning...and tak[ing the client] places like to Columbia, to the hospital, to the doctor's office in Columbia for office visits."[8] Tr. 38. She denied having to lift Ms. Holley. Tr. 39. Plaintiff admitted she was "having some other personal problems" at the time, and that "it was just hard to keep up with" that job. Tr. 38. In contrast, the two Tomaco jobs required lifting elderly clients in and out of the shower or in and out of a bed or chair. Tr. 34, 148-149. Plaintiff testified that she worked briefly for Tomaco Inc.

---

[7]Plaintiff has not disputed that nine months is enough time to learn to do the job of companion. Further, the Dictionary of Occupational Titles provides that the job of companion has a specific vocational preparation ("SVP") of level three. See U.S. Department of Labor, Dictionary of Occupational Titles (4th ed., rev. 1991)("DOT") 309.677-010. The SVP is the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance of a certain job. An SVP of 3 means it should take between 1 and 3 months to learn the position. See DOT, Appendix C. As noted above, Plaintiff held this job for approximately nine months.

[8]Although Plaintiff did not specifically refer to Ms. Holley when describing these job duties, she was specifically discussing the "sitter" job she performed for nine months (Tr. 38-39), which she earlier testified involved caring for Ms. Holley (Tr. 33-34).

in 2003 (this appears to have been caring for Ms. Padgett - see Tr. 126), but could not do the job because it involved "too much lifting, having to mop and bending and stooping." Tr. 34. Thus, Plaintiff's testimony is that she performed the lighter work as a companion for nine months in 2002, which is consistent with the ALJ's determination that Plaintiff's job as a companion constituted past relevant work.

The VE testified that Plaintiff's past jobs included "home [health] attendant," which is generally medium in exertion, and "companion," which is generally light in exertion.[9] Tr. 59. The VE explained that a companion performs duties around the house, guides the client, and may help the client dress or bathe such that the ability to use both upper extremities is necessary, but does not require lifting the client. Tr. 62. He further explained that the job of companion involves assisting a client who is still ambulatory, in contrast to the job of home health attendant which involves a client who needs to be lifted and moved and is either confined to a bed or a wheelchair. Tr. 62. The VE's terminology of the job companion aligns with the work performed by Plaintiff for Ms. Holley for nine months, and the job of home health attendant aligns with Plaintiff's Tomaco Inc. jobs (compare Tr. 33-34, 38-39, and 148-150 with Tr. 59 and 62).

The ALJ asked the VE a hypothetical question involving a claimant who was able to lift up to twenty pounds occasionally and ten pounds frequently with no more than occasional stooping, twisting, crouching, kneeling, climbing of stairs, climbing of ramps, crawling, or balancing, and with no climbing of ladders, ropes, or scaffolds. In response, the VE testified that such an individual could

---

[9]The VE cited job descriptions for these jobs as they are generally performed in the economy. Tr. 59; see DOT 354.377-014 (home health attendant), 309.677-010 (companion).

perform Plaintiff's past light job of companion, but not her other past jobs. Tr. 60.[10] Based on this information, the ALJ properly made a finding that Plaintiff could perform her past relevant work as a companion, as this work did not require the performance of work-related activities precluded by Plaintiff's RFC. Tr. 17.

### B. RFC/Hand Impairment

Plaintiff argues that even if the ALJ properly found that her job as a home companion was SGA, the ALJ erred in determining her RFC. Specifically, she claims the ALJ erred in not finding that she had any manipulative restrictions, his RFC findings are not supported by the evidence or properly explained as required by SSR 96-8p, and because he did not properly evaluate her left (non-dominant) hand impairment he failed to properly consider her combination of impairments. Plaintiff argues that the medical evidence demonstrated that she had a significant impairment regarding the use of her left thumb and left hand that should have resulted in significant manipulative restrictions. The Commissioner contends that the ALJ reasonably concluded that Plaintiff could perform light work without specific hand-related limitations, where the record indicated that Plaintiff had only minimal and conservative treatment for hand problems during the one-year period at issue.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must

---

[10]In response to a hypothetical question involving an individual who could do "less than occasional" gripping and handling with the left hand, occasionally gripping and handling with the right hand, and lifting of no more than ten pounds, the VE testified that such an individual could not work as a companion. Tr. 61.

12

"first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

Here, the ALJ properly considered all of the relevant medical evidence, including Plaintiff's hand impairment, in determining that Plaintiff did not have a manipulative impairment which reduced her ability to perform light work during the relevant time period. The ALJ included osteoarthritis as a severe impairment and limited Plaintiff to light work.

The ALJ's determination concerning Plaintiff's hand impairment and RFC during the relevant time period is supported by substantial evidence in the medical record (as noted by the ALJ in his decision).[11] The record shows that the vast majority of Plaintiff's medical care for problems with her left hand occurred well after the expiration of her insured status. See Tr. 291-307, 318-322. When Plaintiff first began seeing Dr. Hill in November 2003, he prescribed a thumb splint to be worn at night or as needed and thought she could "get by" without surgery for one to three years. Tr. 308, see also Tr. 317. Such conservative treatment is not indicative of a disabling hand limitation during the relevant period. Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986)( "If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). No treating or examining physician (including Dr. Hill) during the relevant time period opined that Plaintiff had any functional limitations that would reduce her RFC beyond the restrictions assessed by the ALJ. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally

---

[11]As the ALJ properly considered Plaintiff's hand impairment, Plaintiff's argument that the ALJ failed to properly consider her combination of impairments (which argument Plaintiff bases on the ALJ's alleged failure to properly consider her hand impairment) necessarily fails.

13

and permanently disabled supported a finding of no disability); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)(treating physician's opinion entitled to great weight).[12]

Dr. Hill offered to schedule surgery sooner if the thumb splint was unsuccessful after a two month trial (Tr. 308), but Plaintiff did not return until April 2004 (Tr. 307), such that it was reasonable for the ALJ to infer that the thumb splint had been reasonably effective and that the condition did not reduce her ability to perform light work. Plaintiff admitted that her joint pain was better when she wore the splint. Tr. 305. Despite her allegations of continuing to have the same problem with constant pain and swelling in her left hand, Plaintiff subsequently went nearly a year (until August 2005) without any further treatment from Dr. Hill. Tr. 302.

Plaintiff appears to argue that the ALJ should have found she had a disabling hand impairment based on her subjective complaints. The ALJ, however, did not find Plaintiff's testimony credible to establish an impairment of the disabling severity alleged for the period prior to her date last insured. This credibility analysis, which has not been challenged by Plaintiff, is supported by

---

[12]As noted above, Dr. Campbell opined in November 2009 that Plaintiff could not lift over ten pounds, could not reach above shoulder level, could occasionally reach at or below waist level, and could occasionally handle and finger. The ALJ properly discounted this opinion as there is no evidence that Dr. Campbell saw Plaintiff before October 2, 2008; she was not treated by Campbell until long after her last date insured; there is no indication that Dr. Campbell reviewed any of Plaintiff's medical records from prior to her last date insured; and Plaintiff testified to a greater capacity during 2002 and 2003 than found by Dr. Campbell (Tr. 16). The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

substantial evidence including her daily activities, inconsistencies in her testimony, that she sought little treatment, and that she took only over-the-counter medication for pain.[13]

The ALJ's decision is also supported by a lack of objective clinical findings from the relevant period. Tr. 16. While there was x-ray evidence of arthritis and Plaintiff complained of pain and swelling, no medical records prior to Plaintiff's last date insured indicated that Plaintiff had reduced grip strength or other observable manipulation deficits as a result of her hand impairment. Tr. 308, 322.

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the

---

[13]In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

    RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

February 8, 2012
Columbia, South Carolina